UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **MICHAEL JEROME FOX** | **CIVIL ACTION** |
| **VERSUS** | **NO. 18-9694** |
| **RANDY SEALS, ET AL.** | **SECTION "E"(4)** |

# REPORT AND RECOMMENDATION

Before the Court is the **Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b) (Rec. Doc. No. 27)** filed by the defendant, Dr. Jerry Thomas. Dr. Thomas seeks dismissal of plaintiff Michael Jerome Fox's complaint for failure to state a claim and failure to exhaust state medical malpractice administrative review. He also claims his entitlement to qualified immunity.

The motion and underlying matter were referred to the undersigned United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B) and (C), § 1915, and § 1915A, and as applicable, 42 U.S.C. § 1997e(c)(1) and (2). On January 24, 2019, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by telephone.[2] Upon review of the record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1] 766 F.2d 179 (5th Cir. 1985). The purpose of the *Spears* Hearing is to ascertain what the prisoner alleges occurred and the legal basis for the claims. The information received is considered an amendment to the complaint or a more definite statement under Fed. R. Civ. P. 12(e). *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2] Rec. Doc. No. 16. Fox gave sworn testimony.

1

I.    **Factual and Procedural Background**

Fox is a convicted inmate housed in the B.B. "Sixty" Rayburn Correctional Center. He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against the defendants, Washington Parish Sheriff Randy "Country" Seal, Assistant Sheriff/Chief of Police Mike Haley, Washington Parish Jail Warden Jim Miller, Assistant Warden Angie McMorris, Dr. Jerry Thomas, and Nurse Joann Saltaformaggio seeking monetary and injunctive relief.

In his complaint, Fox claims that he was subjected to cruel and unusual punishment through the conditions of his confinement at the Washington Parish Jail. He claims that bats occasionally flew through the jail. Broadly construing his claims, he asserts that the cells were smelly and constantly wet from rain dripping from the leaking roof. He also claims that the jail had no heat leaving him cold during the days and nights. He also claims that he had only two extra blankets to keep him warm even while his clothes stayed wet from the leaks and dampness.

Fox also asserts that he suffered deliberate indifference to his health and safety at the jail. Fox claims that because of the cold, wetness, mildew, and bacteria in his cell, he suffered cold and flu symptoms. He claims he received no treatment or assistance except ibuprofen. He also claims he was given nothing to treat an infection on his feet caused by the wet floors. Fox further asserts that, to help with the dampness, the guards ran an extension cord along the wet floors into the cell area to operate a fan and the television. This, he claims, posed a danger of electrocution without regard for his safety.

In the *Spears* Hearing, Fox testified that he is fifty-three years old and was incarcerated in the Washington Parish Jail from June 14, 2016 through February 28, 2018. He stated that the jail had mold and mildew growing on the walls as well as on his bedding. He complained about it and was told that the Washington Parish Government owned the building and was responsible for the

repairs. He was told that the Warden and Assistant Warden sent daily requests to the Parish for the repairs to be made.

Fox stated that he complained of bats flying through the hole in the window. He stated that the inmates would kill the bats with brooms. Because of the moisture in the jail, the temperature was always cold and the inmates were told to have family bring them thermal underwear. Fox further testified that because of the conditions, he developed a cough and a fungus on his feet. He was given sinus pills and medicine for his feet.

Fox stated that he named defendants Seal and Haley as defendants because they were supervisors over the other defendants. He named Miller and McMorris as defendants because he complained to them about the jail conditions and they told him work orders were sent to the Parish. He also stated that he complained to Dr. Thomas that he was having breathing trouble and chest pain and he did not do anything to treat him. He also sued Nurse Joann because she did not want to check on him every day.

After the *Spears* Hearing, Fox filed two letters in which he indicated that he now has prostate cancer and ponders whether the cancer is related to the moldy conditions he endured at the Washington Parish Jail.[3]

In response to the Court's Order at the *Spears* Hearing, the defendants submitted Fox's administrative remedy proceedings and a number of work orders submitted to the Parish government.[4] On January 21, 2017, Fox filed two grievance complaints. In grievance WPSOJ030091, Fox complained of leaking sealings and the conditions of his cell. In grievance

---

[3]Rec. Doc. Nos. 17, 19.
[4]Rec. Doc. No. 18.

3

WPSOJ030086, Fox complained about the leaking ceiling, mold, and other conditions. On January 23, 2017, Angie McMorris responded separately to both complaints that work orders were sent to the Parish. In his review of the first grievance, on January 24, 2017, Warden Miller indicated that Fox's complaints were sent to the Parish government, which is the responsible entity for the facility maintenance. On January 25, 2017, the Sheriff responded that Fox's complaint was forwarded to the Parish President Richard Thomas.

Fox filed another complaint WPSOJ04012 on July 7, 2017, complaining of a leaking roof, overcrowding, and mold. On July 11, 2017, McMorris responded stating work orders were sent to the Parish government. On July 26, 2017, the Sheriff responded that Louisiana law directed the Parish to maintain the jail and daily work orders were sent.

The records provided also include seventeen (17) work orders made by the jail officials to the Parish government between March 7, 2017 and June 15, 2017. These work orders addressed damaged ceilings, leaking roof, hanging wires, backed-up sewage, leaking pipes and sinks, and bug infestations. On March 20, 2017, a work order dated December 14, 2016, was sent to the Parish government and stated "C-Block Cell #3 Not Livable Due to Documented Mold on Walls."

## II. Standard of Review

### A. Standards for Frivolousness Review

Pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A and 42 U.S.C. § 1997e(c), the Court is required to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous. The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 325 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993). However, the Court may not *sua sponte*

4

dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998). "A [claim] lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quoting *Davis v. Scott*, 157 F.3d 882, 889 (5th Cir. 1998)). It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992) (citing *Neitzke*, 490 U.S. at 327-28). Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations. *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

B. **<u>Standards under Fed. R. Civ. P. 12(b)</u>**

Under Fed. R. Civ. P. 12(b), the Court may dismiss a complaint if it lacks jurisdiction over the subject matter or fails to state a claim upon which relief may be granted. *See* Fed. R. Civ. P. 12(b)(1), (6). The same standard is applied for a motion to dismiss brought under either Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim for which relief can be granted. *Benton v. United States*, 960 F.2d 19, 21 (5th Cir. 1992).

To survive a motion to dismiss, the plaintiff must plead in the complaint "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The

Court must accept all well-pleaded facts as true, viewing the complaint in the light most favorable to the plaintiff. *In re Great Lakes Dredge & Dock Co.*, 624 F.3d 201, 210 (5th Cir. 2010); *Guidry v. Am. Pub. Life Ins. Co.*, 512 F.3d 177, 180 (5th Cir. 2007).

The Supreme Court, however, has declared that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (internal citation omitted). Moreover, "'[f]actual allegations must be enough to raise a right to relief above the speculative level,'" and "[t]he plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Guidry*, 512 F.3d 177, 180 (5th Cir. 2007) (quoting *Bell Atl. Corp.*, 550 U.S. at 570). The United States Supreme Court has explained:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Iqbal*, 556 U.S. at 678 (citations and quotation marks omitted).

To determine whether a complaint states a claim that is plausible on its face, the Court "draw[s] on its judicial experience and common sense." *Id.*, at 679. Thus, as stated above, to avoid dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.*, at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570). For a claim to be plausible at the pleading stage, the complaint need not strike the reviewing court as probably meritorious, but it must raise "more than a sheer possibility" that the defendant has violated the law as alleged. *See id*.

The United States Fifth Circuit Court of Appeals has held that, when reviewing *pro se* complaints, the court must employ less stringent standards while still guided by the *Iqbal* pleading

requirements. *High v. Karbhari*, 774 F. App'x 180, 182 (5th Cir. Jun. 12, 2019). "A document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks omitted) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In *Taylor v. Gibson*, 529 F.2d 709 (5th Cir.1976), the Court further explained this standard in the prisoner context:

> It is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly pro se complaints, are not dismissed prematurely, however unlikely the set of facts postulated. An opportunity should be provided [to] the prisoner to develop his case at least to the point where any merit it contains is brought to light.

*Id.*, 529 F.2d at 713-14. Because of this, before dismissing a prisoner complaint, a district court ordinarily should give the *pro se* litigant an opportunity to amend. *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998); *Eason v. Thaler*, 14 F.3d 8, 9 (5th Cir. 1994); *accord Bruce v. Little*, 568 F. App'x 283, 285 (5th Cir. 2014).

### III. Analysis

Fox asserts that the Washington Parish Jail in which he was housed had mold and dampness which led to difficulty breathing and sinus symptoms, and that he did not receive the medical attention he thought his symptoms required. For the following reasons, his claims of medical indifference and unsanitary conditions do not rise to the level of a constitutional violation and are, therefore, frivolous.

#### A. Eighth Amendment and Conditions of Confinement

Fox has not alleged or established a constitutional violation resulting from the conditions of his confinement in order to recover under § 1983 against these defendants. The Eighth Amendment's prohibition on "cruel and unusual punishments" forbids conditions of confinement

"which are incompatible with 'the evolving standards of decency that mark the progress of a maturing society' . . . or which 'involve the unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 102-103 (citations omitted). "[C]onditions that cannot be said to be cruel and unusual under contemporary standards are not unconstitutional. To the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).

In this case, Fox seeks to hold the defendants liable for the conditions of the jail building itself. However, under Louisiana law, the disrepair of the jail building was not the responsibility of the sheriff or the individual jailers to whom Fox complained. Louisiana law divides the responsibility for its parish jails. The duty to administer and operate the jails falls on the sheriff of each parish. La. Rev. Stat. Ann. § 15:704. However, as Fox was repeatedly told, the Parish government is charged with its jails' physical maintenance. La. Rev. Stat. Ann. § 15:702. Fox has not named the Parish or a responsible Parish official as a defendant in this case.

Instead, Fox has identified that Sheriff, Assistant Sheriff, Warden, and Assistant Warden, because they are present at the jail and aware of the conditions in which he lived. However, a state actor may be liable under § 1983 only if he "was personally involved in the acts causing the deprivation of his constitutional rights or a causal connection exists between an act of the official and the alleged constitutional violation." *Douthit v. Jones*, 641 F.2d 345, 346 (5th Cir. 1981); *see also Watson v. Interstate Fire & Casualty Co.*, 611 F.2d 120, 123 (5th Cir. 1980). Furthermore, the official must have acted with deliberate indifference to a known risk of harm to be liable under § 1983.

An official is deliberately indifferent to an inmate's health and safety in violation of the Eighth Amendment "only if he knows that the inmates face a substantial risk of serious harm and

disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Jones v. Greninger*, 188 F.3d 322, 326 (5th Cir. 1999). "Deliberate indifference cannot be inferred merely from a negligent or even a grossly negligent response to a substantial risk of harm." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001). The plaintiff must prove facts sufficient to show "at a minimum, that the prison officials realized there was imminent danger and have refused--consciously refused, knowingly refused--to do anything about it." *Campbell v. Greer*, 831 F.2d 700, 702 (7th Cir. 1987). Applying these factors to the instant case, Fox has not alleged a constitutional violation based on the conditions in Washington Parish Jail.

### 1. Areas of Mold, Dampness, and Wetness/Leaking Toilets

The conditions described by Fox while plainly not comfortable or pleasant, do not rise to a level of seriousness to be considered a constitutional violation. The federal courts have long recognized that serving time in prison "is not a guarantee that one will be safe from life's occasional inconveniences." *Holloway v. Gunnell*, 685 F.2d 150, 156 (5th Cir. 1982). The Courts also have repeatedly held "that the Constitution does not mandate prisons with comfortable surroundings or commodious conditions." *Talib*, 138 F.3d at 215 (citing *Rhodes*, 452 U.S. at 349); *accord Hernandez v. Velasquez*, 522 F.3d 556, 560 (5th Cir. 2008).

In keeping with this philosophy, the federal courts have recognized that certain institutional problems such as dampness, mold, and stale air do not amount to a constitutional violation. *See, e.g., White v. Gusman*, No. 14-2131, 2014 WL 6065617, at *1 (E.D. La. Nov. 12, 2014); *Harrison v. Cox*, No. 12-1813, 2013 WL 620799, at *5 (W.D. La. Jan.16, 2013), *adopted*, 2013 WL 622399, at *1 (W.D. La. Feb. 15, 2013); *Clark v. Gusman*, No. 11-2673, 2012 WL 1825306, at *5 (E.D. La. Mar. 29, 2012), *adopted*, 2012 WL 1825302, at *1 (E.D. La. May 18, 2012). Although Fox

asserts that these factors were present in the Washington Parish Jail, he has not stated a constitutional violation.

Furthermore, even assuming that Fox's sinus, cold symptoms, and other irritations were contracted in or associated with the conditions at the jail, he has not established that any of the defendants intended a risk of serious harm to his person or intentionally ignored that risk. Fox concedes that the prison officials responded to his complaints and forwarded almost-daily requests for repairs to the Parish government effectuate badly needed repairs. The prison officials also provided clothing, blankets, and made other efforts to provide some comfort to Fox and other inmates. Despite his dissatisfaction, Fox received sinus medication, ibuprofen, and medicine for his feet. These actions do not support a claim of deliberate indifference to Fox's health and safety.

Thus, even with the presence of mold and dampness in the areas to which he was assigned, he has not stated a constitutional violation. *See McCarty v. McGee*, No. 06cv113, 2008 WL 341643, at *3 (S.D. Miss. Feb. 5, 2008) ("Plaintiff's claim that the shower he was forced to share with other inmates is polluted and covered in mold and fungus, causing him to catch athlete's foot and ringworm, fails to rise to the level of a constitutional violation."). The jurisprudence has repeatedly held that the presence of mold and dampness in a prison setting does not render an inmate's confinement unconstitutional. *See*, *e.g.*, *Eaton v. Magee*, No. 10-112, 2012 WL 2459398, at *5 (S.D. Miss. Jun. 27, 2012) ("Plaintiff's claim that the bathroom and shower area are unsanitary and contain black mold fails to rise to the level of a constitutional violation."); *Barnett v. Shaw*, No. 11-0399, 2011 WL 2200610, at *2 (N.D. Tex. May 18, 2011) (allegation of "excessive amount of black mold in the showers and sinks" was insufficient to raise a claim for constitutional violation), *adopted*, 2011 WL 2214383, at *1 (N.D. Tex. Jun. 7, 2011); *Reynolds v. Newcomer*, No. 09-1077, 2010 WL 234896, at *10 (W.D. La. Jan. 19, 2010) (complaints of "the

presence of black mold in living areas, eating areas, and shower areas" were found to "rise to no more than a *de minimis* level of imposition with which the Constitution is not concerned" (quotation marks omitted)).

Fox's allegations of mold, leaking fixtures, and dampness fail to establish constitutional violations. *See Smith v. Copeland*, 87 F.3d 265, 269 (8th Cir. 1996) (no constitutional violation when prisoner was exposed for four days to raw sewage from overflowed toilet in his cell); *Davis v. St. Charles Parish Corr. Ctr.*, No. 10-98, 2010 WL 890980, at *9 (E.D. La. Mar. 8, 2010) (citing *Talib*, 138 F.3d at 215). "Simply because [plaintiff's] dorm is less sanitary than he would like does not render the conditions unconstitutional." *Wilson v. Lynaugh*, 878 F.2d 846, 849 & n.5 (5th Cir. 1989)) (inmate who complained of "unsanitary practice[s]," including inadequate ventilation, unsanitary water fountains, fifty-two (52) inmates using one ice cooler, rest room four feet from the dining area, toilets leaking water and unsanitized living quarters, failed to state a claim.). As one federal appellate court has concluded, "[l]eaky toilets and puddles are unpleasant but not unconstitutional." *Smith v. Melvin*, No. 95-2531, 1996 WL 467658, at *2 (7th Cir. Jul. 26, 1996); *accord Davis*, 2010 WL 890980, at *9; *Wilkerson v. Champagne*, No. 03-1754, 2003 WL 22872106, at *3 (E.D. La. Nov. 28, 2003).

For the foregoing reasons, Fox's claims are frivolous and otherwise fail to present a claim for which relief can be granted. The claims should be dismissed for this reason under § 1915, § 1915A, and § 1997e.

### 2. **Adequate Medical Care**

Fox alleges that he did not receive treatment for his cold and sinus like symptoms, which he claims were caused by the dampness and cold at the jail. Claims of deliberate indifference by prison personnel to a prisoner's serious medical needs is actionable under § 1983. *Estelle*, 429

U.S. at 104-105. "A serious medical need is one for which treatment has been recommended or for which the need is so apparent that even laymen would recognize that care is required." *Gobert v. Caldwell*, 463 F.3d 339, 345 n.12 (5th Cir. 2006); *Lewis v. Evans*, 40 F. App'x 263, 264 (5th Cir. 2011).

A prison official is deliberately indifferent if he or she has actual knowledge of a substantial risk of harm to an inmate and disregards that substantial risk. *Farmer*, 511 U.S. at 847; *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir.2004) (the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury); *Washington v. La Porte County Sheriff's Dep't*, 306 F.3d 515 (7th Cir. 2002) (same). Under *Estelle*, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary wanton infliction of pain," proscribed by the Eighth Amendment. *Estelle*, 429 U.S. at 104. This is true where the indifference is manifested by prison officials or prison healthcare providers in their response to the prisoner's needs or in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. *Id*. Thus, in order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference that can offend "evolving standards of decency" in violation of the Eighth Amendment. *Id*.

However, a prisoner's mere disagreement with medical treatment does not state a claim for Eighth Amendment indifference to medical needs. *Gobert*, 463 F.3d at 346; *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001); *Norton v. Dimazana*, 122 F.3d 286, 292 (5th Cir. 1997). Therefore, inadequate medical treatment of inmates, at a certain point, may rise to the level of a constitutional violation, while malpractice or negligent care does not. *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999); *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993) ("It is clear that negligent medical treatment is not a cognizable basis upon which to predicate a section

1983 action."); *Williams v. Treen*, 671 F.2d 892, 901 (5th Cir. 1982) ("mere negligence in giving or failing to supply medical treatment would not support an action under Section 1983."); *see also Jackson v. Cain*, 864 F.2d 1235, 1246 (5th Cir. 1989). Rather, a plaintiff must show that defendants "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985).

In this case, Fox acknowledges that he discussed his cold and sinus symptoms with Dr. Thomas and Nurse Joann, and he received some medication. Fox suggests that he should have received additional care attention from both the doctor and nurse. However, this disagreement over the amount of care does not establish the type of indifference to a serious medical need for purposes of the Eight Amendment. Fox's disagreement with medical treatment fails to reach the level of a constitutional violation. *See, e.g.*, *Domino*, 239 F.3d at 756. A healthcare provider's decision to provide different treatment or no treatment is a matter for medical judgment that is not without more to be second-guessed by a court. *See Gobert*, 463 F.3d at 346.

For the foregoing reasons, Fox's medical indifference claims are frivolous and otherwise fail to state a claim for which relief can be granted under § 1915, § 1915A, and § 1997e.

## IV.     Defendant's Motion to Dismiss

The defendant Dr. Jerry Thomas filed a Motion to Dismiss (Rec. Doc. No. 27), arguing that the claims against him should be dismissed under Fed. R. Civ. P. 12(b) for failure to state a claim for which relief can be granted. The Court has conducted its statutorily required review and finds that Fox's claims against the defendants are legally frivolous and otherwise fail to state a claim for which relief can be granted under § 1983. For this reason, the Court recommends that Thomas's Motion to Dismiss be dismissed as moot.

V.     **Recommendation**

**IT IS THEREFORE RECOMMENDED** that Thomas's **Motion to Dismiss (Rec. Doc. No. 27)** be **DISMISSED AS MOOT**.

**IT IS FURTHER RECOMMENDED** that Fox's § 1983 complaint against the defendants, Sheriff Seal, Assistant Sheriff Haley, Warden Miller, Assistant Warden McMorris, Dr. Thomas, and Nurse Saltaformaggio, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted under 28 U.S.C. § 1915, § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[5]

New Orleans, Louisiana, this ___15th___ day of January, 2020.

_____
**KAREN WELLS ROBY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

---

[5]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.